UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ALAN BOARDMAN,

               Plaintiff,

v.

SHAFIQ REHMAN, N.P.,

               Defendant.
_____/

Civil Action No. 24-10949

Brandy R. McMillion
United States District Judge

David R. Grand
United States Magistrate Judge

### REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 12)

On April 11, 2024, plaintiff Robert Alan Boardman ("Boardman"), an inmate of the Michigan Department of Corrections ("MDOC"), filed his *pro se* civil rights complaint under 42 U.S.C. § 1983.[1] (ECF No. 1). At the time of the events at issue in this lawsuit, Boardman was incarcerated at the Woodland Center Correctional Facility ("WCC"). (*Id.*, PageID.2-3). The only defendant in this action is Shafiq Rehman, N.P. ("NP Rehman").

Now before the Court is NP Rehman's Motion for Summary Judgment Based Solely on the Failure to Exhaust Administrative Remedies, which was filed on September 5, 2024. (ECF No. 12). Boardman filed a response to this motion on October 2, 2024 (ECF No. 14), and NP Rehman filed a reply on October 16, 2024 (ECF No. 15).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal

---

[1] On March 25, 2025, all pretrial matters were referred to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 23).

issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

I.     **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that NP Rehman's Motion for Summary Judgment Based Solely on the Failure to Exhaust Administrative Remedies **(ECF No. 12)** be **DENIED**.

II.     **REPORT**

    A.     **Boardman's Allegations**

The entirety of Boardman's allegations in his complaint reads as follows:

> On Sept 5-23 around 8:42 pm I swallowed an ink pen in front of a nurse. Dr. (sic – NP) Rehman came and seen me. He had me walk through a metal de[te]ctor to see if I swallowed a pen. It did not set it off. At this time [NP] Rehman stated "I'm tired of you dumb ass inmates hurting yourself so I'm not gonna do anything for you." On 9-8-23 I had to do an xray and they found them in my stom[a]ch. They refused to send me out. They told me they are gonna let me suffer[.] On 9-10-23 I made them send me out. I was hospital[i]zed for 9 days. I had two sugreys (sic) on scope down my thro[a]t and a colonoscopy on the last day[.]

(ECF No. 1, PageID.3). Boardman seeks $100,000 in damages from NP Rehman for his alleged deliberate indifference to a serious medical condition. (*Id.*, PageID.4).

NP Rehman now moves for summary judgment, arguing that Boardman failed to properly exhaust his administrative remedies before filing this lawsuit. (ECF No. 12).

    B.     **Standard of Review**

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (internal quotations omitted). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

  **C.**  **Analysis**

In his motion, NP Rehman argues that Boardman failed to properly exhaust his administrative remedies before filing this lawsuit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 12). For the reasons set forth

below, the Court disagrees.

### 1. The PLRA's Exhaustion Requirement

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

### 2. The MDOC's Exhaustion Procedures

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 12-2). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance

4

process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id.* at ¶¶ Q, W). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id.* at ¶ DD). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id.* at ¶ HH). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.* at ¶ C).

### 3. *The Argument that Boardman Failed to Properly Exhaust His Claims against NP Rehman is Waived*

In support of his motion, NP Rehman provides Boardman's "MDOC Prisoner Step III Grievance Report," which shows that, prior to filing his complaint in this case, Boardman pursued only one grievance through all three steps of the grievance procedure during the relevant timeframe, WCC-23-09-0844-12E1 ("WCC-0844"). (ECF No. 12-1). This grievance is summarized below:

| **Grievance No.** | **Individual Grieved** | **Issues Grieved at Step I** | **Grievance Results** |
|---|---|---|---|
| WCC-0844 | None specifically | Boardman alleges he "swallowed a[n] ink pen … in front of nurse at med lines" | Denied at Steps I, II, and III |

NP Rehman attached a legible copy of WCC-0844 as an exhibit to his summary

5

judgment motion. (ECF No. 12-1, PageID.51).[2] The grievance states, "I swallowed a ink pen between 8:30 pm and 9 pm on [September 5, 2023] in front of nurse at medlines." (*Id.*). Boardman also noted in the grievance that he attempted to resolve "this issue" by talking with "nurse[,] doctor[,] and LT [H]astings." (*Id.*). As discussed below, the grievance reviewers addressed WCC-0844 on its merits at all three steps of the grievance process, including as to the conduct by NP Rehman about which Boardman complains in this action.

In his motion, NP Rehman argues that because he is not named at Step I of WCC-0844, there is not enough information in this grievance to put him on notice that his actions were being challenged, which did not "allow him a fair opportunity to correct [his] alleged errors." (ECF No. 12, PageID.43). NP Rehman thus argues that despite Boardman having pursued WCC-0844 through all three steps of the grievance process, he did not properly exhaust his claims against NP Rehman. (*Id.*, PageID.43-44).

A facial review of WCC-0844's contents – in which Boardman merely asserted that he "swallowed a ink pen [on the date and time in question] in front of nurse at medlines" – arguably would not make known to a reviewer what specific conduct Boardman was grieving. But, as discussed below, the evidence before the Court shows that that was not, in fact, the case, and that the grievance reviewer understood Boardman to be challenging the medical care he received from NP Rehman following his swallowing of the pen, which

---

[2] Boardman attached to his complaint a Step I grievance, along with a Step II response. which he contends relate to the allegations in his complaint. (ECF No. 1, PageID.6-7). Although Boardman's copy of the grievance is almost entirely illegible, it appears to be the same one supplied by NP Rehman, as it bears the same grievance identifier.

6

is precisely the claim he asserts against NP Rehman in this case.

It is true that the Policy provides that a Step I grievance must include the name of each individual associated with the issue being grieved. (ECF No. 12-2 at ¶ S ("Dates, times, places, and *names of all those involved in the issue being grieved are to be included*.") (emphasis added)). And, generally speaking, a plaintiff cannot rely on a grievance to exhaust a claim against an individual who is not named at Step I. *See Vandiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002) ("The issues [a plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance."); *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("Under the [MDOC's] procedural rules, inmates must include the … names of all those involved in the issue being grieved in their initial grievance.") (internal quotations omitted); *Clark v. Frontera*, No. 2:06-cv-40, 2008 WL 3833407, at *3 (W.D. Mich. Aug. 13, 2008) ("A prisoner must specifically mention the involved parties in the grievance ….") (citing cases).

Boardman argues, however, that "when a Corrections Facility fails to enforce its Procedural Rules and addresses a Grievance on its merits, such as in this case, the Procedural Defect must be waived." (ECF No. 14, PageID.67).[3] Courts have in fact

---

[3] Boardman also asserts that before he filed his Step I grievance, "he repeatedly asked this Defendant for his name, but was told it didn't matter what his name was. Not until after he received his Step III appeal back denying his appeal … was [he] able to learn the name of this defendant." (ECF No. 14, PageID.67). Boardman thus claims that NP Rehman's failure to provide his name rendered the grievance process unavailable. (*Id.*, PageID.67-68). Because the Court finds that any procedural defects in WCC-0844 were waived when that grievance was addressed on the merits at all three steps, *infra* at 6-11, it need not analyze in detail Boardman's argument that the grievance process was unavailable to him because NP Rehman allegedly refused to provide his name.

7

recognized that "[w]hen prison officials waive enforcement of the MDOC's procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit." *Wilson v. Taskila*, No. 2:21-cv-236, 2022 WL 16745768, at *4 (W.D. Mich. Sept. 20, 2022) (citing *Reed-Bey*, 603 F.3d at 325); *see also Pearson v. Mich. Dep't of Corr.*, No. 19-10707, 2020 WL 4934320, at *4 (E.D. Mich. Aug. 24, 2020) (failure to identify a person by name does not necessarily preclude a finding of exhaustion). This principle applies even when the grievance's defect is a failure to name the defendant. As the Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with [the Policy] – and therefore does not exhaust his administrative remedies under the PLRA – when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides – by, say, identifying *all* relevant defendants – not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). **An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits**. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017) (italics in original, bold added).

Here, while Boardman did not specifically name NP Rehman in his Step I grievance, the Court is not persuaded by NP Rehman's argument that WCC-0844 "failed to put prison officials on notice that [Boardman] was asserting a claim against NP Rehman for anything,

8

let alone the claims that form the basis of this lawsuit." (ECF No. 12, PageID.44). Indeed, in denying Grievance WCC-0844 at Step I, MDOC officials noted:

> INVESTIGATION SUMMARY
> Inmate's report of swallowing a pen confirmed via medical documentation completed by the inmate's primary nurse. Following the inmate's witnessed ingestion of a foreign body object, the nurse contacted the medical provider for further evaluation. The evaluation completed by the medical provider included an inquiry of your health issue, physical assessment, body scan via a metal detector to assist with further confirming the ingestion of the foreign object, ordering of an abdominal x-ray and additional monitoring by health care. For the inmate's safety, a Suicide Risk Assessment was completed and update of the management plan.

(ECF No. 12-1, PageID.52). The Step I response then concluded: "Based on the investigation, findings and interview your healthcare needs are being adequately met and are being actively reviewed to meet your individual need(s). For these reasons, your grievance has been denied." (*Id.*). Thus, Boardman's grievance was not denied at Step I for any procedural reason – such as the failure to name "all those involved in the issue being grieved" – but, instead, was addressed and denied on the merits. Perhaps more importantly, the grievance reviewer appears to have understood that Boardman was grieving, at least in part, the conduct of the "medical provider," *i.e.*, NP Rehman, because the Step I response specifically discussed and evaluated NP Rehman's conduct and determined that it "adequately met" Boardman's "healthcare needs." (*Id.*).

The later steps in the grievance process reflect much the same analysis. Boardman asserted as follows in his Step II appeal: "Due to lack of treatment I was hospitalized for 9 days and it took two surger[ie]s to remove the pens[.]" (*Id.*, PageID.49). In the Step II response, Boardman's grievance was expressly acknowledged to be claiming "that he was denied adequate treatment after swallowing an ink pen in front of the nurse at medication lines." (*Id.*, PageID.50). And, as at Step I, in denying Boardman's grievance at Step II, MDOC officials analyzed the medical treatment he received:

9

> Investigation determined that grievant's issue was appropriately addressed by the Step I Respondent and is affirmed at the Step II Appeal. Review of the electronic medical record reveals that on 09/05/2023 at 2042 during HS medication pass the nurse witnessed the grievant swallow a foreign object through the grievant's cell window and notified the onsite Medical Provider and Registered Nurse. On 09/05/2023 at 2304 the grievant requested his evening medication that he had refused earlier in the evening. Per documentation nursing informed the grievant that medication lines were completed, and it was too late to receive evening medication. Grievant then reported that he was feeling mad and anxious and just wanted his medication. Nursing notified the on call medical provider. On 09/06/2023 at 0013 the grievant was seen by the medical provider re: swallowing pen. Per documentation the grievant reported tenderness to epigastric area and left lumbar and upper abdomen quadrant. Grievant received a body scan via metal detector and no metal was detected. Orders were placed by the medical provider for Radiology- Abdomen-Foreign body survey. On 09/08/2023 foreign body survey x-ray completed showing 2 radiopaque foreign bodies identified in the right aspect of the abdomen, which may be secondary to ingested ink pens. On 09/10/2023 grievant was seen by the medical provider related to ingesting a nail. Grievant was sent to the local ER for evaluation and admitted to the hospital for 9 days at which time the grievant had a colonoscopy and two 4-inch-long pen and one-inch-long nail were successfully retrieved from the descending colon.

(*Id.*). Thus, WCC-0944 was denied on the merits at Step II because it "appear[ed] that [Boardman] ha[d] been evaluated and treated as deemed appropriate based on his past medical history and current clinical presentation." (*Id.*). Again, at least some of this evaluation and treatment appears to be that provided by NP Rehman, the referenced "Medical Provider." Finally, in denying Boardman's Step III appeal, it was again noted that Boardman "alleges Health Care denied him treatment after swallowing a foreign object." (*Id.*, PageID.48).

In analyzing the merits of NP Rehman's exhaustion argument, the Court is mindful of two legal principles. First, failure to exhaust is an affirmative defense, so the *moving party* – here, NP Rehman – has the burden of convincing the Court that "no reasonable jury could find that [Boardman] exhausted his claims." *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *10 (E.D. Mich. Mar. 31, 2016) (citing *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012)). Second, the purpose of the PLRA's exhaustion requirement is to afford corrections officials the time and opportunity to address a prisoner's complaints

internally, before allowing the initiation of a federal case. *See Woodford*, 548 U.S. at 93.

In summary, Boardman's failure to specifically name NP Rehman in his Step I grievance does not mandate a finding that he failed to exhaust because the grievance responses provided by MDOC officials make clear that the nature of Boardman's allegations were understood by the relevant prison officials and addressed on their merits. *See Pearson*, 2020 WL 4934320, at *4. Specifically, responses provided at all three steps of the grievance process recognized that Boardman was challenging the medical treatment provided – including by NP Rehman – after he swallowed an ink pen, addressed the grievance on the merits by evaluating the adequacy of that treatment, and deemed it sufficient. Consequently, NP Rehman waived the right to argue that Boardman's claim against him was not properly exhausted, and his motion for summary judgment should be denied. *See Allen v. Shawney*, No. 11-10942, 2013 WL 2480658, at *4 (E.D. Mich. June 10, 2013) (citing *Reed-Bey*, 603 F.3d at 323); *Hall v. Raja*, No. 09-10933, 2010 WL 3070141, at *3 (E.D. Mich. Aug. 2, 2010) ("Although the [MDOC] policy requires a grievance to include specific names, those requirements are relaxed when the purpose of the grievance has been achieved.").

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that NP Rehman's Motion for Summary Judgment Based Solely on the Failure to Exhaust Administrative Remedies **(ECF No. 12)** be **DENIED**.

Dated: June 30, 2025  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 30, 2025.

                                                s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager